IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| STEVEN CREAR, SR., § § Plaintiff, § § § Civil Action No. 3:17-CV-0159-D VS. § § SELECT PORTFOLIO SERVICING, § INC. & DEUTSCHE BANK TRUST § COMPANY, NATIONAL § ASSOCIATION (AKA DEUTSCHE § BANK NATIONAL TRUST § COMPANY), AS TRUSTEE, § IN TRUST FOR REGISTERED § HOLDERS OF LONG BEACH § MORTGAGE LOAN TRUST § 2005-WL2, ASSET-BACKED § CERTIFICATES, SERIES 2005-WL2, § § Defendants. § | |

MEMORANDUM OPINION
AND ORDER

In this action seeking declaratory relief, defendants Select Portfolio Servicing, Inc. ("SPS") and Deutsche Bank National Trust Company, as Trustee, in trust for registered Holders of Long Beach Mortgage Loan Trust 2005-WL2, Asset-Backed Certificates, Series 2005-WL2 ("Deutsche Bank") move for summary judgment on all claims. Plaintiff Steven Crear, Sr. ("Crear") cross-moves for summary judgment. For the reasons that follow, the court grants SPS's and Deutsche Bank's motion, denies Crear's cross-motion, and dismisses this action with prejudice by judgment filed today.

I

In 2005 Crear obtained a home equity loan in the amount of $114,400.[1] He executed a promissory note ("Note") and secured the indebtedness by executing a deed of trust that encumbered the property, which was located in Dallas (the "Property"), for the benefit of the Long Beach Mortgage Company. Under the terms of the Note and deed of trust (collectively, the "Loan"), if Crear did not pay the full amount of each monthly payment when due, the lender had the right to accelerate the loan without notice or demand. If Crear did not cure the default before the date stated in the acceleration notice, the lender could invoke the power of sale.

The Loan requires monthly payments until May 1, 2035, but Crear has made no payments since December 1, 2007. On February 9, 2009 Washington Mutual Bank, F.A. ("Washington Mutual"), the Loan servicer, sent Crear a Notice of Acceleration. Washington Mutual then sent a Fair Debt Collection Practice ("FDCPA") Notification on December 4, 2009 (the "2009 FDCPA Notice"), listing the amount required to cure the default under the Loan as $28,855.67, and the total amount required to pay off the debt as $145,300.86. It sent another FDCPA Notification on July 16, 2010 (the "2010 FDCPA Notice"), listing the amount required to cure the default under the Loan as $38,512.98 and the total amount

---

[1]Because both sides move for summary judgment, the court will recount the evidence that is undisputed, and, when it is necessary to set out evidence that is contested, will do so favorably to the side who is the summary judgment nonmovant in the context of that evidence. *See, e.g., GoForIt Entm't, LLC v. DigiMedia.com L.P.*, 750 F.Supp.2d 712, 718 n.4 (N.D. Tex. 2010) (Fitzwater, C.J.) (quoting *AMX Corp. v. Pilote Films*, 2007 WL 1695120, at *1 n.2 (N.D. Tex. June 5, 2007) (Fitzwater, J.)).

required to pay off the debt as $152,781.35.

On November 5, 2012, after JPMorgan Chase Bank, N.A. ("Chase")[2] began servicing the Loan, Chase sent to Crear via certified mail at the Property address four notices of acceleration and intent to foreclose, listing the total amount past due as $80,623.23. The notices informed Crear that he was in default because he had failed to pay the required monthly payments commencing with the payment due December 1, 2007. It also stated that, if Crear did not make the payments listed in the notices within 35 days of the date of the notice, Chase would accelerate the maturity of the loan and commence foreclosure proceedings. Chase sent four additional copies of the acceleration notice and intent to foreclose via First-Class mail to the Property address.

The servicing of the Loan was transferred from Chase to SPS on May 1, 2013. SPS sent Crear two Demand Letter-Notice of Default statements—one on July 2, 2013 and one on June 16, 2016.

On November 23, 2016 defendants notified Crear that a foreclosure sale was scheduled for January 3, 2017. On December 12, 2016 Crear filed suit in state court, seeking a declaratory judgment that defendants' right to foreclose on the Property was barred by the statute of limitations, and requesting injunctive relief enjoining the foreclosure sale.

After defendants removed the case to this court, defendants moved for summary judgment on Crear's claims. The court granted the motion and entered summary judgment

---

[2]Because Chase is not a party to this lawsuit, it is unnecessary for the undersigned to recuse based on ownership of Chase common stock.

in defendants' favor after Crear failed to respond to the motion. Without opposition from defendants, Crear moved to vacate the summary judgment, and the court granted the motion. The court now addresses anew defendants' summary judgment motion and Crear's cross-motion. Both motions are opposed.

II

Defendants move for summary judgment on claims for which Crear will have the burden of proof at trial. Because Crear will have the burden of proof, defendants' burden at the summary judgment stage is to point the court to the absence of evidence of any essential element of Crear's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once they do so, Crear must go beyond his pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict in Crear's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Crear's failure to produce proof as to any essential element of a claim renders all other facts immaterial. *TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory where Crear fails to meet this burden. *Little*, 37 F.3d at 1077.

Because Crear will have the burden of proof at trial on his declaratory judgment claim, to be entitled to summary judgment on this claim, he "must establish 'beyond peradventure all of the essential elements of the claim[.]'" *Bank One, Tex. N.A. v. Prudential Co. Of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780

F.2d 1190, 1194 (5th Cir. 1986)). This means that Crear must demonstrate that there are no genuine and material fact disputes and that he is entitled to summary judgment as a matter of law. *See Martin v. Alamo Cmy. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). "The court has noted that the 'beyond peradventure' standard is 'heavy.'" *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marin Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

III

Before addressing defendants' motion for summary judgment, the court will consider Crear's objections to defendants' summary judgment evidence that are pertinent to the grounds on which the court decides the summary judgment motions.

A

Defendants submitted a declaration of Michael Burns, Esquire ("Burns"), an attorney for Brice, Vander Linden, & Wernick P.C. ("BPC"), the law firm that represented Washington Mutual. Crear contends that Burns's declaration fails to establish that he is competent to offer testimony regarding Washington Mutual's mailing of the two FDCPA notices. Crear objects to the Burns declaration as conclusory and vague because there is no certified mail number, return receipt, tracking information, or other credible evidence the letters were mailed. Defendants respond that the Burns declaration is competent summary evidence because Burns's position affords him the requisite personal knowledge to testify regarding the mailings.

B

Fed. R. Civ. P. 56(c)(4) provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." The court concludes that Burns has sufficient knowledge of the mailing of the notices to testify that they were sent by certified mail. Although Burns did not personally send the notices, when "an affiant has not participated in the matters to which he swore, he may still 'glean personal knowledge of the practices of that organization by participating in those practices or reviewing the organization's records.'" *BP Expl. & Prod. Inc. v. Cashman Equip. Corp.*, 2016 WL 1387907, at *1 (S.D. Tex. Apr. 8, 2016) (citing *Hamilton v. Trover Solutions, Inc.*, 104 Fed. Appx. 942, 944 (5th Cir. 2004)). Burns avers:

> I acquired personal knowledge of the facts set forth in this Declaration from my employment by and personal review of the pertinent portions of BPC's business records regarding the Loan. I have care, custody and control of Firm records concerning the referenced default and foreclosure activity, and I am a custodian thereof. My testimony is based upon my familiarity with the business practices and record keeping system of BPC and my review of BPC's records.

Ds. App. 105. Moreover, Burns's declaration is supported by designations on both FDCPA notices indicating that the notices were sent "[v]ia Certified Mail return receipt requested." Ds. App. 108, 110. The court concludes that Burns's position as custodian of the firm records and his personal review of the records establish a sufficient foundation for his declaration. *Cf. Jorrie v. Bank of N.Y. Mellon Tr. Co., N.A.*, 2017 WL 6403054, at *9 (W.D.

Tex. Sept. 11, 2017) (when showing service of explicit rescission of acceleration notice under § 16.038, affiant need not be knowledgeable of who specifically sent the notice, and proof of mailing not required). The court will therefore consider the declaration accordingly.

IV

The court now turns to the merits of defendants' summary judgment motion.

A

Crear seeks a declaratory judgment that defendants' right to foreclose on the Property is barred by the four-year statute of limitations prescribed by Tex. Civ. Prac. & Rem.Code Ann. § 16.035 (West 2018), because more than four years have elapsed since Washington Mutual accelerated Crear's loan on February 9, 2009. Defendants move for summary judgment on two grounds,[3] but the court need only consider the contention that because the undisputed facts show that Washington Mutual abandoned the February 2009 acceleration, its foreclosure cause of action did not accrue from that date and is not time-barred.

B

Tex. Civ. Prac. & Rem. Code Ann. § 16.035 provides that "[a] person must bring suit for the recovery of real property under a real property lien or the foreclosure of a real property lien not later than four years after the day the cause of action accrues." When this four-year period expires, "the real property lien and a power of sale to enforce the real

---

[3] Defendants also maintain that Crear's request for declaratory judgment fails as a matter of law because Crear fails to assert an underlying cause of action. The court does not address this argument because it decides the motions on another ground.

property lien become void." § 16.035(d); *Khan v. GBAK Props., Inc.*, 371 S.W.3d 347, 353 (Tex. App. 2012, no pet.) (quoting *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 567 (Tex. 2001)). If the noteholder has the option to accelerate, then the date of accrual is the date that the holder exercises the option. *Khan*, 371 S.W.3d at 353 (citing *Holy Cross*, 44 S.W.3d at 566). "While accrual is a legal question, whether a holder has accelerated a note is a fact question[.]" *Holy Cross*, 44 S.W.3d at 568.

Abandoning acceleration before the limitations period expires restores the contract to its original condition, including the note's original maturity date. *Khan*, 371 S.W.3d at 353; *Holy Cross*, 44 S.W.3d at 567; *Clawson v. GMAC Mortg., LLC*, 2013 WL 1948128, at *3 (S.D. Tex. May 9, 2013). Thus if a noteholder abandons acceleration, it no longer must foreclose within four years from the date of acceleration. Texas courts and courts in this circuit have held that "the parties can abandon acceleration and restore the contract to its original terms by the parties' agreement or actions." *Khan*, 371 S.W.3d at 356 (citing *San Antonio Real-Estate, Bldg. & Loan Ass'n v. Stewart*, 94 Tex. 441, 61 S.W. 386, 388 (Tex. 1901)); *see also, e.g.*, *In re Rosas*, 2014 WL 1779437, at *10 (Bankr. W.D. Tex. May 5, 2014); *Clawson*, 2013 WL 1948128, at *3; *Santibanez v. Saxon Mortg. Inc.*, 2012 WL 3639814, at *2 (Tex. App. Aug. 23, 2012, no pet.) (mem. op.). Continuing to accept payments on a note while opting not to pursue other remedies is one action that indicates abandonment of acceleration, but a noteholder may also abandon acceleration by other actions, including providing account statements seeking less than the full accelerated amount and mailing new notice-of-intent-to-accelerate letters. *See Boren v. U.S. Nat'l Bank Ass'n*,

2014 WL 6892553, at *3 (S.D. Tex. Sept. 8, 2014) (citing *Leonard v. Ocwen Loan Servicing, LLC*, 2014 WL 4161769, at *5 (S.D. Tex. Aug.19, 2014) (holding that account statements put debtor on notice that lender had abandoned previous acceleration)), *rec. adopted in relevant part*, 2014 WL 5486100 (S.D. Tex. Oct. 29, 2014). Joint action of the parties is not required to abandon the acceleration. Rather, a party may abandon the acceleration unilaterally. *See Clawson*, 2013 WL 1948128, at *4 (citing cases for proposition that lender may abandon acceleration "without express agreement from the borrower").

C

The court concludes that there is no genuine fact issue that Washington Mutual and Chase, through their actions, abandoned the February 2009 acceleration of Crear's debt.

Washington Mutual first accelerated the Loan on February 9, 2009. But on December 4, 2009 and July 16, 2010, Washington Mutual sent two FDCPA Notifications that sought to collect payments that were less than the total amount owed on the Loan. The December 4, 2009 notice sought a cure amount of $28,855.67, while the total amount to pay off the debt was $145,300.86. The July 16, 2010 notice sought a cure payment of $38,512.98, while the total amount required to pay off the debt was $152,781.35.

The court thus concludes that the December 4, 2009 and July 16, 2010 FDCPA Notifications were sufficient to put Crear on notice that Washington Mutual was no longer seeking to collect the full balance of the Note and had abandoned the February 2009 acceleration. *See Leonard*, 2014 WL 4161769, at *4-5.

This result is supported by decisions from other courts within this circuit. In *Leonard*

the court held that a lender had abandoned acceleration when it sent subsequent account statements listing less than the full amount as due, "put[ting the borrowers] on notice that [the lenders] were no longer seeking to collect the full balance of the Note." *Leonard*, 2014 WL 4161769, at *4-5. In *Boren* the court concluded a lender had abandoned acceleration by sending subsequent notice-of-default letters listing less than the full amount of the loan as due, and by sending subsequent notice-of-intent-to-accelerate letters. *Boren*, 2014 WL 6892553 at *3-4. And in *Meachum v. Bank of New Tork Mellon Trust Co.*, 2015 WL 765982 (N.D. Tex. Feb. 20, 2015) (Godbey, J.), Judge Godbey concluded the lender had abandoned acceleration by sending a subsequent notice of default letter listing an amount less than the full amount of the note as due, and by sending a subsequent notice-of-intent-to-accelerate letter. *Id.* at *1.

Because Washington Mutual abandoned the acceleration within four years of the date the Loan was first accelerated, the Note was restored to its original maturity date, and holders of the Loan were no longer required to foreclose within four years of the date of the acceleration.

D

Crear maintains that the two FDCPA notices did not comply with § 8 of the Note, which provides: "Unless applicable law requires a different method, any notice that must be given to [the borrower] under this Note will be given by delivering it or by mailing it by first class mail[.]" Note § 8. Crear posits that because defendants failed to present evidence that the two FDCPA notices were sent via first class mail, they were deficient under the terms of

the Note and did not abandon acceleration. This argument lacks force.

In sending the FDCPA notices via certified mail, the senders exceeded the protections required by the Note. *See Lindsey v. Ocwen Loan Servicing, LLC*, 2011 WL 2550833, at *6 (N.D. Tex. June 27, 2011) (Lindsay, J.) (holding that "Plaintiff's attempt to elevate 'first class mail' above 'certified mail' [is] nonsensical. 'Certified' or 'registered' mail is in a category higher than 'first class.' Thus, Defendants have gone above what was legally required by the contract.").

In this case, defendants have offered the declaration of Burns, who avers that "[o]n or about December 4, 2009, BPC, on behalf of Washington Mutual as servicing agent for Trustee Bank, sent the Borrower a letter by certified mail return receipt requested . . . providing notice to the Borrower that the amount necessary to cure the default on the loan was $28,855.67." Ds. App. 105. Burns also avers that "[o]n or about July 16, 2010, BPC, on behalf of Washington Mutual as servicing agent for Trustee Bank, sent the Borrower a letter by certified mail return receipt requested . . . providing notice to the Borrower that the amount necessary to cure the default on the loan was $38,512.98." *Id.* Washington Mutual's mailing of such notices via certified mail unequivocally manifests intent to abandon the 2009 acceleration. *See supra* § III(C).

The court is also unpersuaded by Crear's argument that defendants did not properly abandon acceleration because Crear did not actually receive the FDCPA notices. Crear provides no argument or legal authority that actual receipt of notices is required for defendants to abandon acceleration. And in the context of other foreclosure notices, courts

have held that service of notice is complete when sent via certified mail. *Cf. Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 256 (5th Cir. 2013) (citing Tex. Prop. Code § 51.002(e)).

Accordingly, the court concludes that no reasonable jury could find based on the summary judgment record that Washington Mutual did not properly abandon the February 9, 2009 acceleration through its actions, and, therefore, that the four-year limitations period under § 16.035(a) accrued on February 9, 2009.[4] Defendants' motion for summary judgment is granted, and Crear's declaratory judgment claim and related requests for relief are dismissed with prejudice. Crear's cross-motion for summary judgment is denied.[5]

---

[4]Because the court holds that the undisputed facts show that Washington Mutual abandoned acceleration through the mailing of the two FDCPA notices, it does not analyze whether the eight letters sent by Chase properly abandoned acceleration. The court thus does not address the objections that Crear makes to the Chase notices on a number of evidentiary and substantive grounds.

[5]Because the court is granting defendants' motion for summary judgment on Crear's declaratory judgment and related claims, it holds that Crear has not carried his burden to establish beyond peradventure all of the essential elements of his request for declaratory judgment.

* * *

For the reasons stated, the court grants defendants' motion for summary judgment, denies Crear's cross-motion for summary judgment, and enters judgment in favor of defendants dismissing this action with prejudice.

**SO ORDERED**.

May 16, 2018.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE